COURT OF APPEALS
DECISION
DATED AND FILED

October 18, 2023

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP734-CR**

Cir. Ct. No.  2019CF857

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DENNIS E. MUTTERS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Dennis E. Mutters appeals from a judgment convicting him of possession of child pornography, causing a child to view sexual activity, and child sexual exploitation. Mutters argues that the circuit court erred in denying his motion to suppress evidence because state troopers illegally seized him, his cell phone, and his laptop computer. We affirm.

¶2 This case stems from then fifty-three-year-old Mutters' encounter with a state trooper after police discovered then seventeen-year-old Olivia[1] in the sleeping cab of Mutters' semi-truck, which was parked next to a passenger car in an otherwise empty parking lot. The trooper conducted a brief investigation at the scene where Mutters' semi-truck was parked, then told Mutters and Olivia that they were free to go. The trooper, along with back-ups, later had contact with Olivia inside of a Kwik Trip while Mutters was sitting outside in Olivia's car. During this encounter, the troopers discovered that Olivia and Mutters were dating. Olivia consented to a search of her cell phone, on which the troopers discovered several messages and photos of a sexually explicit nature that Olivia said she had sent to Mutters. After discovering that illegal pornographic material had been sent to Mutters, one of the troopers secured Mutters' cell phone and laptop and searched Mutters' semi-truck. Mutters was eventually arrested and charged with fifteen offenses, including nine counts of possession of child pornography.

¶3 Mutters filed a motion to suppress all evidence obtained from the search of his semi-truck, including evidence obtained pursuant to a search warrant for Mutters' cell phone and laptop. Mutters argued that the initial encounter with the trooper in the parking lot, and subsequently at the Kwik Trip, were unlawful

---

[1] We use a pseudonym to protect the victim's right to privacy.

seizures. He also asserted that the troopers did not have probable cause to search his semi-truck or to seize Mutters' cell phone and laptop.

¶4    The circuit court held an evidentiary hearing on Mutters' suppression motion. Three of the state troopers who had been involved in the encounters in the parking lot and the Kwik Trip testified. Mutters also testified. After hearing all the evidence and arguments of counsel, the circuit court denied Mutters' suppression motion.

¶5    The circuit court made several factual findings related to Mutters' illegal seizure argument, including that: "there was no stop;" the encounter between one of the troopers, Mutters, and Olivia at the semi-truck in the parking lot was "all consensual" because Mutters and Olivia "were free to leave and, in fact, they did leave, and they went to the Kwik Trip[;]" the encounter at the Kwik Trip "wasn't reinitiated with [Mutters,]" but with Olivia; Mutters "voluntarily" went into the Kwik Trip, allowed a trooper to use Mutters' cell phone to talk to Olivia's mother, and then left "the area[;]" Olivia consented to the search of her cell phone; Mutters had given, then revoked, consent to search his cell phone; Mutters' cell phone was not searched at that time; and Mutters voluntarily left the Kwik Trip and returned to his semi-truck unaccompanied by officers. Based on these facts, the court found that "virtually everything up until they found the pornographic images on the phone was all done by consent with Mr. Mutters taking the phone when he want[ed] and walking out when he want[ed]."

¶6    In denying Mutters' suppression motion, the circuit court found many aspects of Mutters' testimony "inconsistent," noting that portions of his testimony were "contradictory" and "incredible" at times. The court specifically found "inconsistent" and "incredible" Mutters' testimony that he was told "he was under

3

arrest" and felt compelled to give consent to a search of his semi-truck. On the flip side, the court found the contrary testimony by the trooper "credible." As further support for its decision, the court also observed that Mutters "wasn't accompanied to the truck by law enforcement" when he left the Kwik Trip after taking his cell phone back from the trooper.

¶7 The circuit court next concluded that after the consensual search of Olivia's phone revealed that she had sent pornographic material to Mutters, the troopers had probable cause to believe that Mutters was in possession of child pornography. Thus, the court determined, it was not illegal under the circumstances for the troopers to search Mutters' semi-truck and to seize his cell phone and laptop to secure them before later searching them pursuant to a warrant.

¶8 The circuit court held another hearing after Mutters filed a motion for reconsideration and again denied Mutters' suppression motion. As relevant to this appeal, the court confirmed its factual finding that "there was no stop of [Mutters] at the Kwik Trip" and that all contact between Mutters and the troopers was "consensual." Mutters subsequently entered a plea and was found guilty of causing a child to view sexual activity, child sexual exploitation, and possession of child pornography. Mutters appeals.

¶9 Mutters argues that he was illegally seized at the Kwik Trip. He further contends that his cell phone and laptop were illegally seized. Based on his assertions that the troopers violated his Fourth Amendment rights, he asks us to conclude that the circuit court erred in denying his motion to suppress.

¶10 "Review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact, which [this court] review[s] under two different standards." *State v. Hughes*, 2000 WI 24, ¶15, 233 Wis. 2d

280, 607 N.W.2d 621. "We uphold a circuit court's findings of fact unless they are clearly erroneous[,]" but "[w]e then independently apply the law to those facts[.]" *See* ***id***.

¶11 The Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Wisconsin Constitution both protect against unreasonable searches and seizures by law enforcement. ***County of Grant v. Vogt***, 2014 WI 76, ¶18, 356 Wis. 2d 343, 850 N.W.2d 253. However, these protections "are not implicated until a government agent 'seizes' a person." ***Id.***, ¶19 (citation omitted). Furthermore, "not all personal interactions between law enforcement officers and people constitute a seizure." ***Id.*** The test for determining whether a seizure occurred is whether "a reasonable person would have believed he was free to disregard the police presence and go about his business." ***State v. Young***, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729. It is an objective test that considers the totality of the circumstances. ***Vogt***, 356 Wis. 2d 343, ¶31.

¶12 We defer to a circuit court's finding as to whether an individual was seized or instead "would have felt free to leave." *See* ***id.***, ¶¶2, 41-42. In ***Vogt***, our supreme court upheld the circuit court's determination that the defendant was not seized when a police officer knocked on the driver's side window of his vehicle and asked him to roll down the window, even though the officer parked right behind defendant's vehicle and rapped loudly on the window. ***Id.***, ¶¶39-45. The facts in ***Vogt*** share many similarities to the circumstances presented here, including the fact that the circuit court explicitly found that Mutters was not seized at any time during the encounters with the troopers and implicitly found that a reasonable person in Mutters' position "would have felt free to leave." *See* ***id.***, ¶¶41-42.

¶13    Our independent review of the record shows that the evidence supports the court's finding that all aspects of the encounters between the troopers and Mutters were "consensual." To summarize the court's relevant findings recited above, Mutters was free to leave, and did so, after the encounter in the parking lot; Mutters voluntarily went into the Kwik Trip; and Mutters voluntarily made contact with the troopers and showed them his cell phone before he revoked consent and took his cell phone back. These facts all support the circuit court's finding that Mutters was never seized by the troopers.

¶14    As discussed above, the court also made credibility findings, deciding that Mutters' testimony was "inconsistent" and "incredible," while finding the trooper's competing testimony credible. We defer to these credibility determinations because "the circuit court judge is in the best position to make an appropriate determination." *State v. Lamon*, 2003 WI 78, ¶38, 262 Wis. 2d 747, 664 N.W.2d 607.

¶15    For all these reasons, we conclude that the circuit court's findings are not clearly erroneous. The record supports the court's determination that Mutters was never seized by the troopers. Thus, the court did not err in denying Mutters' suppression motion on that ground.

¶16    Mutters' next challenge is to the seizure of his cell phone and laptop, although not the search of them. After seizing them, the troopers obtained a warrant before searching their contents. The circuit court determined that the troopers had probable cause to believe that Mutters had committed a crime after they had searched Olivia's cell phone, with her consent, and discovered the pornographic materials she admitted she sent to Mutters. When police "have probable cause to believe that a container holds contraband or evidence of a crime, but have not

secured a warrant…the [Fourth] Amendment [allows] seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it…." *See **United States v. Place***, 462 U.S. 696, 701 (1983); *see also **Hughes***, 233 Wis. 2d 280, ¶17 (noting "this court and the United States Supreme Court have recognized exceptions to the warrant requirement where the government can show both probable cause and exigent circumstances that overcome the individual's right to be free from government interference.").

¶17 The troopers had probable cause to believe that Mutters' cell phone and laptop contained evidence of a crime—namely, possession of child pornography. Olivia had told the troopers that she had sent Mutters pornographic materials, including photos. A person who possesses a cell phone or laptop can quickly and easily destroy the device itself or the data it contains. *See **Riley v. California***, 573 U.S. 373, 388-89 (2014). Mutters could have erased text and Facebook messages, photos, videos, and call logs, or physically destroyed the cell phone and laptop altogether if the troopers had not seized it. *See **id.*** The risk of destruction is the relevant inquiry, and that risk is high when evidence is located on a cell phone or laptop. ***Id.*** Given these exigent circumstances, the seizure of Mutters' cell phone and laptop was not illegal. *See*, *e.g.*, ***State v. Deen***, No. 2020AP1399-CR, unpublished slip op. ¶¶11, 14 (WI App Aug. 24, 2021) (cited for persuasive value) (upholding warrantless seizure of cell phone based on suspicion it contained evidence of possession of child pornography and noting "other courts have upheld warrantless seizures of electronic devices based on the risk that a suspect would destroy those devices, or the evidence they contained, after learning of law enforcement's investigation."). Thus, we conclude that the circuit court did not err in denying Mutters' motion to suppress evidence found in the cell phone and laptop.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.